**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, LOCAL 2798, *et al.*,<br><br>           Plaintiffs,<br><br>           v.<br><br>CAROL WALLER POPE, *et al*.,<br><br>           Defendants. |

Civil Action No. 10-01012 (BAH)

**<u>MEMORANDUM OPINION</u>**

A physician and his labor union brought this lawsuit seeking review of a decision by the

General Counsel of the Federal Labor Relations Authority ("FLRA") not to issue an unfair labor

practice complaint.  The plaintiffs contend that the FLRA General Counsel's decision not to

issue the unfair labor practice complaint relied on an incorrect interpretation of a statutory term

and that the General Counsel improperly denied as untimely the plaintiffs' motion for

reconsideration of the decision.  As a result, the plaintiffs claim that the defendants – the

Chairman of the FLRA and the FLRA General Counsel – violated their procedural and

substantive due process rights under the United States Constitution and that they misapplied

applicable law, acted beyond their established authority, and engaged in conduct that is arbitrary,

capricious, and an abuse of discretion.  As detailed below, since decisions by the FLRA General

Counsel to issue or not to issue unfair labor practice complaints are not subject to judicial

review, the Court dismisses the plaintiffs' non-constitutional claims for lack of subject matter

jurisdiction.   In addition, the Court grants summary judgment for the defendants on the

plaintiffs' constitutional claims.

## I.   BACKGROUND

### A.  The Parties

Plaintiff Mohammed Hussain is a physician who was previously employed at the Department of Veterans Affairs Medical Center ("VA") in Washington, D.C.  Compl. ¶ 6.  The other plaintiff in this case, American Federation of Government Employees, AFL-CIO, ("AFGE") Local 2798, is a labor union that was the bargaining representative for Plaintiff Hussain and other VA physicians during the period of Hussain's employment at the VA.  *Id.* ¶¶ 4-5.  The plaintiffs are suing the Chairman and the General Counsel of the FLRA in their official capacities.  *Id.* ¶¶ 7-8.

### B.  Plaintiff Hussain's Employment at the VA Medical Center

Dr. Hussain worked in the Radiology Therapy Service of the VA for 27 years.  *See* May 20, 2008 Letter from Peter A. Sutton, FLRA Regional Director, to Johnnie A. Landon, Attorney ("Regional Director Declination Letter").  In June 2003, the VA modified Dr. Hussain's clinical privileges and renewed them for only three months as opposed to the previously customary two-year period.  *Id.*  On July 28, 2003, Dr. Hussain received a report from his supervisor which gave him an overall rating of "low satisfactory."  *Id.*  That day, Dr. Hussain notified the VA that he felt he had little choice but to resign due to deteriorating work conditions and that he viewed his resignation as a constructive discharge.  *Id.*  Subsequently, Dr. Hussain requested to be placed on indefinite medical leave and submitted a request for a disability retirement.[1]  *Id.*

---

[1] Dr. Hussain's decision to seek medical leave appears to have arisen directly from his difficulties at work.  *See* Ex. 3 to Pls.' Opp'n to Defs.' Mot. to Dismiss or for Summ. J., Arbitration Decision and Award, March 26, 2007, at 16 ("What precipitated this need for sick leave was that . . . Dr. Hussain received his annual performance evaluation . . . which was a distressingly low evaluation for Dr. Hussain.  He felt the evaluation was unfair. . . [His doctors] recognized that he had an obsession with what he perceived as injustice and discrimination being practiced against him in the work place which in turn caused him to suffer from intense stress and anxiety.").

On August 5, 2003, the VA informed Dr. Hussain that he could take sick leave until August 11, but that additional leave would require medical documentation and that if such documentation were not provided, he would be placed on absent without leave ("AWOL") status. *Id.* The VA subsequently placed Dr. Hussain on AWOL status on August 12, 2003. Compl. ¶ 13.

### C. Equal Employment Opportunity Complaint

On September 5, 2003, Dr. Hussain filed a formal Equal Employment Opportunity ("EEO") administrative complaint, alleging that the VA had discriminated against him by placing him on AWOL status, by denying him leave, by delaying the processing of his retirement papers, and by constructively discharging him. Regional Director Declination Letter; Compl. ¶ 14. Dr. Hussain ultimately brought a Title VII lawsuit in federal court on his discrimination claims, but the suit resulted in a judgment in favor of the VA. *See Hussain v. Principi*, 344 F. Supp. 2d 86 (D.D.C. 2004), *aff'd*, 435 F.3d 359 (D.C. Cir. 2006).

### D. Grievance Procedure

On September 15, 2003, ten days after Dr. Hussain had filed his EEO complaint, AFGE, pursuant to a negotiated grievance procedure between the VA and its bargaining unit employees, filed a grievance arising out of the treatment of Dr. Hussain. Compl. ¶¶ 10, 13. The grievance challenged the VA's authority to place Dr. Hussain on AWOL status on August 12, 2003 for not providing medical documentation to the VA and also challenged the VA's decision to continue Dr. Hussain's AWOL status after he provided medical documentation on September 15, 2003. *Id.* ¶ 13. The VA rejected the grievance and continued Dr. Hussain in AWOL status because the VA deemed his September 15, 2003 medical documentation to be inadequate. *Id.* ¶ 15. AFGE then elevated the grievance to arbitration. *Id.*

An arbitrator heard the grievance and issued an award and opinion. *Id.* ¶ 16. According

to the plaintiffs, the arbitrator found that the VA's initial decision placing Dr. Hussain on AWOL

status and the VA's decision to continue his AWOL status after September 15, 2003 violated the

union contract, which provided that Dr. Hussain did not have to provide medical documentation

for his illness until returning to work. *Id.* ¶ 17. The arbitrator also found that the VA

constructively discharged Dr. Hussain by placing and keeping him on AWOL status. *Id.* The

arbitrator ordered Dr. Hussain be reinstated with back pay and that the VA pay his attorneys'

fees. *Id.*

The VA refused to implement the arbitrator's award. *Id.* ¶ 18.

### E.  Unfair Labor Practice Charge Before the FLRA

AFGE then filed an unfair labor practice charge with the FLRA Washington Region to

enforce the arbitrator's award. *Id.* ¶ 19.

The FLRA "is an independent administrative federal agency that was created by Title VII

of the Civil Service Reform Act of 1978, also known as the Federal Service Labor-Management

Relations Statute and 'FSLMRS.'" *Nat'l Treasury Emps. Union v. Chertoff*, 452 F.3d 839, 848

(D.C. Cir. 2006) (citing 5 U.S.C. § 7101 *et. seq*.). The FLRA is "intended to play a role in

Federal sector labor-management relations analogous to that of the National Labor Relations

Board (NLRB) in the private sector." *Turgeon v. Fed. Labor Relations Auth.*, 677 F.2d 937,

938-39 n.4 (D.C. Cir. 1982). The Federal Service Labor-Management Relations Statute

("FSLMRS") divides the FLRA's powers between the Authority itself and an independent

General Counsel. *Id.*; *see also* 5 U.S.C. § 7104.

The General Counsel of the FLRA "serves at the pleasure of the President" and has by

statute "separate authority" from that of the FLRA. *Nat'l Air Traffic Controllers Ass'n v. Fed.*

*Serv. Impasses Panel*, 606 F.3d 780, 783 (D.C. Cir. 2010) (quoting *Turgeon*, 677 F.2d at 938

n.4.).  "Her principal duties are to investigate unfair labor practice charges, issue unfair labor

practice complaints arising from those charges, and prosecute those complaints before the

FLRA." *Id*.  "A union or an employer accusing its counterpart of an unfair labor practice first

submits a charge to a Regional Director of the FLRA, 5 C.F.R. § 2423.6(a), who, acting 'on

behalf of the General Counsel,' investigates the charge, 5 C.F.R. § 2423.8(a), and decides

whether to issue a complaint, 5 C.F.R. § 2423.10(a)." *Id.*  "If the Regional Director dismisses

the charge, then the charging party may appeal that decision to the General Counsel, 5 C.F.R. §

2423.11(c), but the General Counsel's decision whether to issue a complaint is not subject to

judicial review." *Id.* (citing *Turgeon*, 677 F.2d at 940).  If the General Counsel issues a

complaint, then it prosecutes the complaint at a hearing before the Authority.  *See* 5 U.S.C. §

7118.

        In this case, the plaintiffs' unfair labor practice charge was transferred from the FLRA's

Washington Regional Director to the Chicago Regional Director.[2]  Compl. ¶ 19.

        The Chicago Regional Director, acting on behalf of the General Counsel, found that there

was no evidence the VA committed an unfair labor practice by declining to implement the

plaintiffs' arbitration award.  Regional Director Declination Letter; Compl. ¶ 20.  The Regional

Director based this decision on his conclusion that the arbitrator had actually been precluded

from adjudicating the grievance due to the fact that Dr. Hussain had previously filed an EEO

complaint on the "same matter" as the grievance.  Compl. ¶ 20.  As the Regional Director noted

in his decision, a relevant part of the Federal Service Labor-Management Relations Statute states

that:  "An aggrieved employee affected by a prohibited personnel practice under section

2302(b)(1) of this title which also falls under the coverage of the negotiated grievance procedure

_____

[2] The parties do not address the reasons for the region transfer.

may raise the matter under a statutory procedure or the negotiated procedure, *but not both*." 5

U.S.C. § 7121(d) (emphasis added); *see also* Compl. ¶ 20.  Since the Regional Director

determined that Dr. Hussain had already raised the same matter under the statutory EEO

procedure as he had raised under the subsequent negotiated grievance procedure, the Regional

Director found that the grievance should have been precluded pursuant to 5 U.S.C. § 7121(d).

Regional Director Declination Letter.

AFGE appealed the Regional Director's decision to the FLRA General Counsel "on the

basis that the VA's initial decision that placed Dr. Hussain on AWOL was not the 'same matter'

as the VA's subsequent decision to continue him in an AWOL status after he supplied the VA

with medical documentation on September 15, 2003," Compl. ¶ 21, although, according to the

plaintiffs' Complaint in this action, the grievance apparently did challenge both Dr. Hussain's

placement on AWOL status as well as his continuation in that status.  *See id.* ¶ 13.  The plaintiffs

contend that the Regional Director's interpretation of the term "matter" as used in 5 U.S.C §

7121(d) is at odds with a 2007 decision of the Federal Circuit that, according to the plaintiffs,

suggests that the imposition of an employment status and the continuation of that status

constitute separate "matters."  *See id*. ¶ 22 (citing *Rhodes v. Merit Sys. Prot. Bd.*, 487 F.3d 1377

(Fed. Cir. 2007)).

The General Counsel upheld the Regional Director's decision not to issue an unfair labor

practices complaint on the plaintiffs' charge.  *Id. ¶ 22.*  In upholding the decision on appeal, the

General Counsel acknowledged the plaintiffs' argument, but found that the plaintiffs' appeal had

"established no ground for either reversing the Regional Director's decision or remanding the

case for further investigation . . . ."  Ex. H to Defs.' Mem., Order Denying Appeal dated

September 9, 2009.  Thereafter, AFGE filed a motion for reconsideration of the General

Counsel's decision, which was denied as untimely although AFGE objects that the motion was, in fact, timely.  Compl. ¶¶ 23-31.

### F.  The Instant Complaint

On June 16, 2010, the plaintiffs brought this action alleging two counts.  In Count I, the plaintiffs allege that "[b]y refusing to consider the plaintiffs' motion for reconsideration on the pretext of an untimely filing of the motion, [the defendants] deprived plaintiff Hussain of a property interest in continued employment as restored by the arbitrator's award" in violation of "the rights of plaintiffs to procedural and substantive due process of law and equal protection of the laws in violation of the Fifth Amendment to the United States Constitution."  *Id.* ¶ 35.[3]  In Count II, the plaintiffs allege that by refusing to issue a complaint, the defendants "violated plaintiff Hussain's procedural and substantive due process rights as provided by the United States Constitution, misapplied applicable law, acted beyond their established authority, and engaged in conduct that is arbitrary, capricious, and an abuse of discretion by operation of law." *Id.* ¶ 37.  The plaintiffs seek declaratory and injunctive relief that would force the defendants to reinstate the plaintiffs' motion for reconsideration as timely; declare that the plaintiffs' interpretation of the term "matter" as used in 5 U.S.C. § 7121(d) is correct and binding on the General Counsel; and enjoin a particular attorney in the FLRA Office of General Counsel from further participation in the plaintiffs' case.[4]  *Id.*, Prayer for Relief.

On October 7, 2010, the defendants moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.  Alternatively, the defendants move for summary judgment on

---

[3] The Complaint has two paragraphs numbered 35.
[4] The plaintiffs' umbrage at this particular attorney appears to have arisen from the circumstances surrounding the dispute over whether the plaintiffs' request for reconsideration was timely filed.  *See* Compl. ¶¶ 25-33.

the grounds that there are no material facts in dispute and judgment as a matter of law is warranted.[5]

The defendants' motion is presently before the Court.[6]

## II.  STANDARDS OF REVIEW

### A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

A court must dismiss a case when it lacks subject matter jurisdiction.  *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 62 (D.D.C. 2007).  "Plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."  *Am. Farm Bureau v. U.S. EPA*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000); *accord Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  It is well established that, in deciding a motion to dismiss for lack of subject matter jurisdiction, a court must construe the allegations in the Complaint liberally but "need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiffs' legal conclusions." *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006); *see also Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987).  The Court must be assured that it is acting within the scope of its jurisdictional authority and therefore must give the plaintiffs' factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *See Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Westberg v. FDIC*, 759 F. Supp. 2d 38, 41 (D.D.C. 2011); *Dubois v. Wash. Mut. Bank*, 2010 U.S. Dist. LEXIS 91855, at *5-6 (D.D.C. Sept. 2, 2010); *Hoffman v. District of Columbia*, 643 F. Supp. 2d 132, 135-136

---

[5] The defendants also originally argued that the Complaint should be dismissed for insufficiency of service of process pursuant to Rule 12(b)(5) because the plaintiffs did not serve both the U.S. Attorney for the district in which the complaint is filed and the Attorney General, as required by Fed. R. Civ. P. 4(i).  It appears that service on these parties has now been completed, however.  *See* ECF Nos. 9, 11.
[6] This case was reassigned to the current presiding judge on February 22, 2011.

(D.D.C. 2009); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14

(D.D.C. 2001).  In evaluating subject matter jurisdiction, the Court, when necessary, may look

outside the Complaint to "undisputed facts evidenced in the record, or the complaint

supplemented by undisputed facts plus the court's resolution of disputed facts."  *Herbert v. Nat'l*

*Acad. of Sci.*, 974 F.2d 192, 197 (D.C. Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404,

413 (5th Cir. 1981)); *see also Alliance for Democracy v. FEC*, 362 F. Supp. 2d 138, 142 (D.D.C.

2005).

## B.  Summary Judgment

The defendants have also moved pursuant to Rule 12(b)(6) for dismissal for failure to

state a claim upon which relief can be granted, or, alternatively, for summary judgment pursuant

to Rule 56.  If, on a motion under Rule 12(b)(6), "matters outside the pleadings are presented to

and not excluded by the court, the motion must be treated as one for summary judgment under

Rule 56." Fed. R. Civ.P. 12(d); *see also Strong-Fischer v. Peters*, 554 F. Supp. 2d 19, 22 (D.D.C.

2008); *Morris v. Lowe's Home Centers, Inc.*, No. 10-cv-388, 2011 WL 2417046, at *2-3

(M.D.N.C. June 13, 2011).  Since matters beyond the pleadings will be considered here, the

defendant's motion will be treated as one for summary judgment.

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant a motion for

summary judgment "if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law" based upon the pleadings, depositions,

and affidavits and other factual materials in the record. Fed. R. Civ. P. 56(a), (c); *Tao v. Freeh*,

27 F.3d 635, 638 (D.C. Cir. 1994). The Court "need consider only the cited materials, but it may

consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court must view all

inferences in a light most favorable to the non-moving party. *Tao*, 27 F.3d at 638 (citing

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 255 (1986)).  The burden is on the moving

party to demonstrate that there is an "absence of a genuine issue of material fact" in dispute.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In this case, the plaintiff does not appear to contest that the defendants' contention that

there are no material factual disputes.[7]  Therefore, to the extent that the Court has jurisdiction

over the claims in this action, judgment as a matter of law is appropriate.

## III.   DISCUSSION

For the reasons explained below, the plaintiffs' statutory claims that the defendants

"misapplied applicable law, acted beyond their established authority, and engaged in conduct

that is arbitrary, capricious, and an abuse of discretion by operation of law" must be dismissed

for lack of subject matter jurisdiction.   In addition, the Court grants summary judgment for the

defendants on the plaintiffs' constitutional claims.

### A.   Reviewability of Non-Constitutional Claims

The plaintiffs in this case seek judicial review of the FLRA General Counsel's decision

not to issue a complaint.   The D.C. Circuit has "declared flatly that it has no jurisdiction to

review decisions by the General Counsel of FLRA declining to issue unfair labor practice

complaints because such decisions do not constitute final orders of the [FLRA]" and the judicial

review provisions of the Federal Service Labor-Management Relations Statute only provide for

judicial review of "any final order of the [FLRA]."  *Patent Office Prof'l Ass'n v. FLRA*, 128 F.3d

751, 752 (D.C. Cir. 1997) (hereinafter, "*POPA*") (citing *Turgeon*, 677 F.2d at 938-39); *see also*

*Laird v. FLRA*, No. 03-1015, 2003 WL 21195488, at *1 (D.C. Cir. May 19, 2003) (per curiam)

---

[7] Consistent with Local Civil Rule 7(h)(1), the defendants have provided a statement of undisputed facts along with their motion for summary judgment.  The plaintiffs have not provided any counter-statement of genuine issues of fact in dispute.  Accordingly, the Court "may assume that facts identified by the moving party in its statement of material facts are admitted." *See* Local Civil Rule 7(h)(1).

("This court lacks jurisdiction to review a decision by the General Counsel of the Federal Labor

Relations Authority not to issue an unfair labor practice complaint."); *Brookens v. FLRA*, No. 02-

1281, 2003 WL 40485, at *1 (D.C. Cir. Jan. 3, 2003) (per curiam) (same).  Indeed, the D.C.

Circuit's pronouncements emphasizing the non-reviewability of decisions of the FLRA General

Counsel have been strikingly unequivocal.  *See POPA*, 128 F.3d at 753 ("Lest there be any

lingering confusion, we write to make clear that . . . it remains the law of this circuit that a

decision of the General Counsel of FLRA not to file a complaint is not judicially reviewable

given that the statute provides for review only of decisions of the Authority.")

The parties on both sides of this case agree on the general non-reviewability of the

General Counsel's decisions not to issue an unfair labor complaint.  *See* Pl.'s Opp'n to Defs.'

Mot. to Dismiss or for Summ. J. ("Pls.' Mem.") at 2-3; Defs.' Mem. in Supp. of Mot. to Dismiss

or for Summ. J. ("Defs.' Mem.") at 12-14.  The plaintiffs argue, however, that their claims are

nonetheless reviewable by this Court under three purported exceptions to this general rule

precluding judicial review of the General Counsel's decisions.   The plaintiffs argue that the

General Counsel's decision is reviewable because it is a jurisdiction-disclaiming agency

decision, because it embodies an official agency interpretation of a statute, or constitutes an

agency order that violates clear statutory mandates.  The Court is not persuaded by these

arguments and will therefore dismiss the plaintiffs' non-constitutional claims for lack of subject

matter jurisdiction.  *See POPA*, 128 F.3d at 753.

### 1.   No "Disclaimer of Jurisdiction" Exception Applies to the Plaintiffs' Claims Against the FLRA.

The plaintiffs argue that, although the General Counsel's enforcement decisions are

generally non-reviewable, "if an agency's non-enforcement decision is based on the agency's

decision that it does not have jurisdiction over the matter to be enforced, the jurisdictional basis

of the non-enforcement decision is subject to judicial review."  Pls.' Mem. at 3.  The plaintiffs

argue that the D.C. Circuit's 1986 ruling in *International Longshoreman's Association, AFL-CIO*

*v. National Mediation Board* recognized an exception to the general non-reviewability of

discretionary agency decisions where an agency's non-enforcement decision rests on a

disclaimer of jurisdiction.  *See id.* (citing *Int'l Longshoreman's Ass'n,*785 F.2d 1098 (D.C. Cir.

1986) (hereinafter, "*ILA*")).  While this exception may be available in other contexts, the D.C.

Circuit indicated in its ruling in *POPA* that this exception does not apply to decisions of the

General Counsel about whether to issue complaints.  *See POPA*, 128 F.3d at 753 & n.1.

In *ILA*, the D.C. Circuit held that federal courts could review otherwise non-reviewable

orders of the National Mediation Board, an agency that coordinates labor relations in the railroad

and airline industry, if the orders in question found that the Board lacked jurisdiction over an

application for mediation.  *ILA*, 785 F.2d at 1101.  *ILA* reaffirmed a similar holding in a previous

decision involving the National Mediation Board.  *See id.* at 1100-1101 (citing *Air Line*

*Dispatchers Ass'n v. Nat'l Mediation Bd.*, 189 F.2d 685 (D.C. Cir. 1951), *cert. denied*, 342 U.S.

849 (1951)).  The plaintiffs argue that this Court should extend the *ILA* exception to decisions of

the FLRA General Counsel not to issue a complaint, if those decisions are based on the

conclusion that the General Counsel lacks jurisdiction to issue a complaint.

The D.C. Circuit has indicated, however, that the *ILA* exception does not apply to the

General Counsel's decisions about whether to issue complaints.  In *POPA*, the plaintiff argued

for a substantially similar exception to the non-reviewability of a decision of the FLRA General

Counsel not to issue a complaint.  Specifically, the plaintiff in *POPA* pointed to a footnote in the

Supreme Court's decision in *Heckler v. Chaney,* 470 U.S. 821 (1985), "in which the Supreme

Court noted that it did not decide whether an agency's discretionary decision not to exercise its

enforcement authority might be subject to review if the decision was based either on the

agency's conclusion that it lacked jurisdiction or on a general policy 'so extreme as to amount to

an abdication of [the agency's] statutory responsibilities.'" *POPA*, 128 F.3d at 753 (quoting

*Heckler*, 470 U.S. at 833 n.4). The *POPA* plaintiff, citing this footnote in *Heckler*, argued that

the "court can review decisions of the General Counsel not to issue unfair labor practice

complaints when such decisions are the result of a misguided agency policy." *Id.* The D.C.

Circuit in *POPA* noted that the Ninth Circuit had relied on this footnote in *Heckler* to endorse

exceptions to the general rule that discretionary agency enforcement decisions are not

reviewable. *Id.* (citing *Montana Air Chapter No. 29 v. FLRA*, 898 F.2d 753 (9th Cir. 1990)).[8]

The D.C. Circuit roundly rejected this argument in the FLRA context, explaining that "[b]oth

this court and the Supreme Court have declared, even after *Heckler*, that decisions of the General

Counsel of the National Labor Relations Board whether to issue complaints are not subject to

review by this court, and we now reaffirm the same for the General Counsel of FLRA." *Id.*

        The D.C. Circuit further added: "Our reasoning is specific to the [Federal Service Labor-

Management Relations Statute], and we thus do not question the cases in this circuit that allow

judicial review of agency nonenforcement decisions in certain other contexts. Most importantly,

we do not disturb this circuit's exceptions to the general rule, under *Heckler*, that § 701(a)(2) of

the Administrative Procedure Act precludes judicial review over nonenforcement decisions."

*POPA*, 128 F.3d at 753 n.1 (citing, *inter alia*, *ILA*). Accordingly, in reaffirming the rule that

decisions of the FLRA General Counsel not to issue a complaint are not subject to judicial

review, the D.C. Circuit specifically noted that the *ILA* exception advanced by the plaintiffs here

---

[8] In *Montana Air Chapter No. 29*, the Ninth Circuit relied on both *Heckler* and the D.C. Circuit's ruling in *ILA* to hold that the court did have jurisdiction to review a decision of the FLRA General Counsel not to issue a complaint. 898 F.2d at 756-57. The fact that the D.C. Circuit squarely addressed this Ninth Circuit decision and rejected it seriously undermines the plaintiffs' reliance on *ILA* here.

remains valid in other contexts, but does not apply to the General Counsel's decisions.

Therefore, this Court is bound by Circuit precedent to hold that the *ILA* exception for

jurisdiction-disclaiming agency orders does not apply to decisions of the General Counsel of the

FLRA regarding whether to issue complaints.[9]

### 2. The General Counsel's Decision Is Not Reviewable Merely Because It Embodied A Statutory Interpretation.

The plaintiffs' second argument is that this Court may review the General Counsel's

decision not to issue a complaint because this Circuit permits unreviewable agency decisions to

be reviewed where a legal challenge focuses on an agency's announcement of a substantive

statutory interpretation. *See* Pls.' Mem. at 15-16 (citing *Int'l Union, United Auto., Aerospace &*

*Agr. Implement Workers of America v. Brock*, 783 F.2d 237 (D.C. Cir. 1986) (hereinafter, "*Int'l*

*Union*"). This argument fares no better for the plaintiffs.

In *Int'l Union*, the D.C. Circuit held that "an agency's statutory interpretation was

presumptively reviewable even if announced in the context of a non-enforcement decision."

*Crowley Caribbean Transp., Inc. v. Pena*, 37 F.3d 671, 675 (D.C. Cir. 1994) (citing *Int'l Union*,

783 F.2d at 245-46). Subsequent D.C. Circuit and Supreme Court decisions have substantially

narrowed the viability of the *Int'l Union* exception, however. *See id.* at 676. As the D.C. Circuit

explained in *Crowley*, the Supreme Court has "squarely reject[ed] the notion of carving

reviewable legal rulings out from the middle of non-reviewable actions." *Id.* (citing *ICC v. Bhd.*

*of Locomotive Eng'rs*, 482 U.S. 270 (1987)). *Crowley* makes clear that while "an agency's

statement of a general enforcement policy may be reviewable for legal sufficiency where the

agency has expressed the policy as a formal regulation after the full rulemaking process or has

---

[9] Moreover, even if the *ILA* exception were to apply to decisions of the FLRA General Counsel regarding whether to issue complaints, it is not clear that the decision challenged by the plaintiffs in this case is the type of jurisdiction-disclaiming order that could fall within the exception. Indeed, the defendant contends "the plaintiffs' suggestion that the General Counsel made a determination regarding the FLRA's jurisdiction is misplaced." Defs.' Reply at 6. The Court does not reach this issue, however, since it has concluded that the exception is inapplicable.

otherwise articulated it in some form of universal policy statement," an individual non-enforcement decision that does not express a broad, general enforcement policy ordinarily should not be treated as a substantive agency statutory interpretation that rebuts the presumption against the non-reviewability of agency enforcement decisions. *Id.* at 676-77. Based on the Court's review of the record here, there is no indication that the General Counsel's decision not to issue a complaint in the plaintiffs' case reflected the sort of broad enforcement policy that could give rise to judicial review under *Crowley.* Further, the D.C. Circuit's ruling in *POPA* suggests that – like the *ILA* exception – the *Crowley* exception is also not available in the context of the FLRA General Counsel's decisions about whether to issue complaints. *See POPA*, 128 F.3d at 753 n.1 (explaining that the D.C. Circuit's holding about the non-reviewability of the General Counsel's nonenforcement decisions is specific to the Federal Service Labor-Management Relations Statute and does not disturb the holdings of other cases that have identified areas in which judicial review of agency nonenforcement decisions may be permitted, including, *inter alia*, *Crowley*, 37 F.3d at 674-77). Accordingly, the plaintiffs cannot obtain judicial review of the General Counsel's decision not to issue a complaint based upon any purported statutory interpretations embodied in that decision.

### 3. The *Leedom v. Kyne* Exception Does Not Apply To The Plaintiffs' Claims.

The plaintiffs state that the Regional Director and General Counsel made "statutory interpretation errors" in their decision not to issue a complaint. Pls.' Mem. at 12. In *Leedom v. Kyne*, 358 U.S. 184 (1958), the Supreme Court created a "narrow," "extremely limited" exception that confers federal jurisdiction even where Congress is understood generally to have precluded review. *Griffith v. FLRA*, 842 F.2d 487, 492 (D.C. Cir. 1988). This narrow exception may enable judicial review where an agency has clearly acted contrary to a statute, for example,

by disregarding "a specific and unambiguous statutory directive." *Griffith*, 842 F.2d 487 at

493(citing *United Food and Commercial Workers, Local 400 v. NLRB*, 694 F.2d 276, 279 (D.C.

Cir. 1982)). "Garden-variety errors of law or fact [committed by an agency] are not enough" to

invoke *Leedom* jurisdiction. *Id.*

The plaintiffs state that they do not "rely solely or principally upon [*Leedom*] as their

basis of review of the instant case." Pls.' Mem. at 2. They have not argued in detail in their

brief that *Leedom* should apply nor have they identified any clear and unambiguous statutory

provision that the General Counsel has violated. To the extent that the plaintiffs do rely on

*Leedom*, however, that reliance is misplaced because "[g]arden-variety errors of law or fact,"

such as those alleged by the plaintiffs here, are not enough to invoke the *Leedom* exception.

### B. Constitutional Claims

While the plaintiffs' non-constitutional claims must be dismissed for lack of subject

matter jurisdiction, the plaintiffs' constitutional claims are reviewable in federal court. *See*

*Griffith*, 842 F.2d at 494 (finding judicial review provisions of the FSLMRS did not preclude

plaintiff's as-applied constitutional due process challenge).[10] Accordingly, the Court turns to the

merits of the plaintiffs' constitutional claims.[11]

The plaintiffs contend that the arbitrator's award restored a constitutionally protected

property interest in continued employment to Dr. Hussain. Pl.'s Mem. at 6. The plaintiffs argue

that Dr. Hussain has been deprived of this property interest by the General Counsel's purportedly

---

[10] D.C. Circuit authority subsequent to *Griffith* has, in some instances, questioned the continuing vitality of some of the premises underlying the rationale for *Griffith*'s conclusion. *See Lepre v. Dep't of Labor*, 275 F.3d 59, 67 (D.C. Cir. 2001). *Griffith*'s ultimate conclusion that the FSLMRS's jurisdictional provisions do not bar review of constitutional claims has not been overruled, however. Accordingly, the Court considers the plaintiffs' Constitutional claims on the merits.

[11] On July 25, 2011, approximately seven months after the completion of briefing on the defendants' motion, the plaintiffs filed a motion requesting "a status conference to determine whether the parties shall provide additional briefing on the constitutional issues in this case" and requesting oral argument. The Court finds that providing the plaintiffs with an additional opportunity to brief the issues in this case is unwarranted. In addition, pursuant to Local Civil Rule 7(f), the request for oral argument is denied.

erroneous statutory interpretations and by the General Counsel's failure to accept the plaintiffs'

motion for reconsideration as timely filed.  *See* Pl.'s Mem. at 6, 15-18.  According to the

plaintiffs, these alleged deprivations infringed the plaintiffs' rights to procedural and substantive

due process of law in violation of the Fifth Amendment to the U.S. Constitution.  *See id.*; Compl.

¶¶ 35-37.  The Court disagrees and rules that summary judgment on the plaintiffs' constitutional

claims should be granted for the defendants.

"The first inquiry in every due process challenge is whether the plaintiff has been

deprived of a protected interest in 'liberty' or 'property.'  Only after finding the deprivation of a

protected interest do we look to see if the government's procedures comport with due process."

*Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010) (citation omitted); *see also*

*Griffith*, 842 F.2d at 495-501 (upholding district court's rejection of due process challenge to

FLRA's disposition of plaintiff's claim because plaintiff had no protected property interest in an

annual within-grade pay increase).  Even assuming, *arguendo*, however, that plaintiff Hussain

has a protected property interest in this case and that the plaintiffs are correct that the General

Counsel's decision not to issue a complaint was based upon a legal error, "a mere violation of

law does not give rise to a due process claim."  *Am. Fed'n of Gov't Emps., AFL-CIO, Local 446*

*v. Nicholson*, 475 F.3d 341, 353 (D.C. Cir. 2007).

In order to prevail on a substantive due process claim, the plaintiffs would need to

demonstrate "an act of grave unfairness," such as "a deliberate flouting of the law," and the

plaintiffs in this action have not done so.  *Id.* (quotations omitted); *see also Tri Cnty. Indus., Inc.*

*v. District of Columbia*, 104 F.3d 455, 459 (D.C. Cir. 1997); *Elkins v. District of Columbia*, 527

F. Supp. 2d 36, 49 (D.D.C. 2007) ("The government's infringement of the recognized property

interest must constitute a grave unfairness: Inadvertent errors, honest mistakes, agency

confusion, even negligence in the performance of official duties, do not warrant redress.")
(quoting *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988)).  Any legal errors in the
General Counsel's decision not to issue a complaint on the plaintiffs' unfair labor practice charge
or in the calculation of the timeliness of the plaintiffs' motion for reconsideration would not rise
to the level of substantive due process violation.  To the extent the plaintiffs allege the denial of
the motion for reconsideration as untimely was pretextual or in bad faith, that allegation is not
supported by specific facts or factual allegations that would create a triable issue of fact on that
question.[12]  Accordingly, the Court grants summary judgment to the defendants on the
substantive due process claim.

 Summary judgment is also appropriate on the plaintiffs' procedural due process claim.
Generally, procedural due process "requires notice and opportunity for hearing appropriate to the
nature of the case." *Pearson v. District of Columbia*, 644 F. Supp. 2d 23, 46 (D.D.C. 2009),
*aff'd* 377 F. App'x 34 (D.C. Cir. 2010) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).
The plaintiffs' allegations here show that they availed themselves of the procedures specified for
requesting that the General Counsel issue an unfair labor practices complaint.  The FLRA

---

[12] Plaintiffs currently argue that the motion for reconsideration was originally due on and was timely filed by
September 28, 2009. Pls.' Mem. at 15. On September 14, 2009, however, plaintiffs' counsel filed a request for
extension of time to file their motion for reconsideration "up to and including September 28, 2009," and this request
for extension of time stated the plaintiffs' view, at that time, that the motion for reconsideration had a "September
21, 2009 deadline date." *See* Ex. I to Def.'s Mem., Charging Party's Request for an Extension of Time, Sept. 14,
2009. This request for extension of time was denied. *See* Ex. J to Def.'s Mem., Denial of Request for Extension of
Time. Considering that the plaintiffs previously contended that the motion for reconsideration was due on
September 21 – which, even accepting plaintiffs' position that the motion was filed on September 28, would have
made their filing untimely – the plaintiffs certainly have not established that the government's treatment of the
motion as untimely was in bad faith. Further, in any event, the FLRA's regulations do not provide an automatic
right to reconsideration. Rather, a decision of the General Counsel will only be reconsidered upon a showing of
"extraordinary circumstances." *See* 5 C.F.R. § 2423.11(g) ("After the General Counsel issues a final decision, the
Charging Party may move for reconsideration of the final decision if it can establish extraordinary circumstances in
its moving papers."). The defendants state that, far from establishing extraordinary circumstances, a "cursory
review of the plaintiffs' motion for reconsideration indicates that it does nothing more than repeat the arguments
made in their appeal." Defs.' Reply at 10 n.3. Thus, even if the motion were accepted as timely, it is apparent the
General Counsel would deny reconsideration, and that decision would not be reviewable in federal court, as
discussed above.

Regional Director considered the plaintiffs' unfair labor practice charge and issued a decision

declining to file a complaint.  Compl. ¶ 20. The plaintiffs appealed this decision to the General

Counsel, who upheld the decision not to file a complaint.  *Id.* ¶ 22.  As with the plaintiffs'

substantive due process claim, even assuming, *arguendo*, that the agency made an error in

calculating the timeliness of the motion for reconsideration, that would not suffice to state a

claim for violation of procedural due process.  *See Am. Fed'n of Gov't Emps., Local 2741 v.*

*District of Columbia*, 689 F. Supp. 2d 30, 35-36 (D.D.C. 2009) (dismissing procedural due

process claim where plaintiffs failed to "allege facts that suggest they were deprived of any

process due to them" and noting that "[e]ven assuming the [defendant's] actions have run awry

of [certain] statutes. . . such violations do not amount to a constitutional violation. 'A mere

violation of law does not give rise to a due process claim.'") (citing *Nicholson*, 475 F.3d at 353).

Accordingly, the Court will grant summary judgment for the defendants on the procedural due

process claim.[13]

## IV.    CONCLUSION

For the reasons detailed above, the plaintiffs' non-constitutional claims are dismissed for

lack of subject matter jurisdiction and summary judgment is granted for the defendants on the

plaintiffs' constitutional claims.  An appropriate Order will issue.


DATED: September 1, 2011                           /s/   *Beryl A. Howell*

                                                   BERYL A. HOWELL
                                                   United States District Judge

---

[13] Although the plaintiffs referenced an Equal Protection claim in the Complaint, they have not addressed the legal basis for this claim in their brief, and no such legal basis is apparent.  Therefore, summary judgment for the defendants on this claim is also appropriate.